UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AMANDA WEILAND,

                        Plaintiff,

     -vs-                          **No. 6:16-CV-06100 (MAT)**
                                          **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                        Defendant.

---

**I. Introduction**

Represented by counsel, Amanda Weiland ("plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, plaintiff's motion is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

**II. Procedural History**

The record reveals that in July 2012, plaintiff (d/o/b January 26, 1979) applied for DIB, alleging disability as of March 15, 2012. After her application was denied, plaintiff requested a hearing, which was held via videoconference before administrative

law judge David J. Begley ("the ALJ") on September 11, 2013. The ALJ issued an unfavorable decision on December 12, 2013. The Appeals Council denied review of that decision and this timely action followed.

### III. Summary of the Evidence

Throughout the relevant time period, plaintiff was treated for back pain and migraines by physician's assistant ("PA") Laura Moore at Arcadia Family Practice in Marion, New York. On February 2, 2012, plaintiff's physical examination was normal and PA Moore noted that her back pain, which was not associated with a known injury, "[was] markedly improved." T. 215. PA Moore also noted that plaintiff's headaches continued and she was prescribed Imitrex up to three times per week. That same day, PA Moore wrote a note stating that plaintiff could return to work "without restrictions" on February 6, 2012. On March 15, 2012, however, plaintiff returned to PA Moore complaining that her back pain had been resolved until the day before "when [it] began bothering [her] at work and [she] needed to come home." T. 218. On physical examination, lumbosacral range of motion ("ROM") was decreased and straight leg raise ("SLR") test was positive on the right. Plaintiff was prescribed hydrocodone for pain and Zofran for nausea. An MRI of plaintiff's lumbar spine dated March 23, 2012 revealed mild spondylosis of the lumbosacral spine with mild bilateral neural foraminal narrowing at L4-5 and L5-S1.

Plaintiff continued to demonstrate decreased ROM and tenderness of the lumbosacral spine in treatment with PA Moore through August 2012. In a note dated April 30, 2012, PA Moore stated that plaintiff could not work for two weeks due to low back pain. In a treatment note dated August 31, 2012, Dr. David Moorthi, a specialist in spine and pain care, noted that plaintiff's MRI "show[ed] arthritis and disc bulge but [did] not explain [plaintiff's] pain." T. 245. Dr. Moorthi noted that plaintiff's ROM was within normal ranges and she had full strength of the lower extremities. The record reflects that plaintiff attended physical therapy for approximately four weeks. On September 27, 2012, plaintiff received a bilateral sacroiliac joint injection for pain management.

In April 2013, plaintiff saw PA Moore who noted that plaintiff complained of gastroenteritis symptoms and a depressive episode spanning the previous month. Plaintiff was prescribed venlafaxine, an antidepressant, and Abilify, an antipsychotic. Subsequent treatment notes indicate that plaintiff was discontinued from Abilify and prescribed Risperdal, another antipsychotic, instead. In December 2013, plaintiff reported to PA Moore that her sacroiliac joint injection was helpful and she was trying to obtain insurance coverage for another. On physical examination, plaintiff demonstrated decreased ROM of the lumbosacral spine and right-side positive SLR. Plaintiff had another sacroiliac injection in early

January 2014, but complained to PA Moore that her pain remained the same. SLR was negative but plaintiff reported tenderness in the lumbosacral spine. In a treatment note dated August 13, 2013, PA Moore indicated that plaintiff could stand for approximately two hours in an eight-hour workday; could walk for a total of three hours in an eight-hour workday but would need to rest after walking for 30 minutes; could sit for two hours in an eight-hour workday but only continuously for one hour at a time; and could not lift more than 10 pounds.

Plaintiff received mental health treatment at Wayne Behavioral Health Network from approximately May through October 2013. Upon diagnostic review in May 2013, plaintiff reported "sadness starting about 3 years ago when life felt out of control, then leveled off and since being pulled out of work due to back problems a year ago she report[ed] mood lability; easily irritated by others; decreased appetite; decrease in hygiene . . .; little motivation and energy to take care of herself and her home." T. 298. She was currently prescribed Effexor and Wellbutrin (both antidepressants). She was diagnosed with depressive disorder, not otherwise specified ("NOS"). Plaintiff's treating social worker, Rachel Prince, assigned plaintiff a global assessment of functioning ("GAF") score of 50, indicating serious symptoms. See generally American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV"), at 34 (4th ed. rev. 2000) (describing

global assessment of functioning ("GAF") scoring). On mental status examination ("MSE") upon initial consultation, plaintiff demonstrated depressed mood, poor hygiene, and limited judgment, but otherwise the MSE was generally unremarkable. On August 27, 2013, plaintiff's MSE was unremarkable except for depressed mood.

**IV. The ALJ's Decision**

Initially, the ALJ determined that plaintiff met the insured status requirements of the Act through June 30, 2017. At step one of the five-step sequential analysis, see 20 C.F.R. § 404.1520, the ALJ determined that plaintiff had not engaged in substantial gainful activity since March 15, 2012, the alleged onset date. At step two, the ALJ found that plaintiff suffered from the following severe impairments: lumbosacral neuritis, migraines, obesity, and depression. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. In considering plaintiff's mental impairments, the ALJ found that plaintiff had mild restrictions in activities of daily living ("ADLs") and social functioning; moderate restrictions in maintaining concentration, persistence, or pace; and no prior episodes of decompensation.

Before proceeding to step four, the ALJ determined that plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she could not climb ladders, ropes, or scaffolds; she was limited to occasional climbing of

ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; she must avoid slippery or uneven surfaces, hazardous machinery, and unprotected heights; and she was limited to simple, routine, and repetitive tasks. At step four, the ALJ concluded that plaintiff could perform past relevant work as a filler operator and assembler. Accordingly, the ALJ found that plaintiff was not disabled at step four and did not proceed to step five.

**V.  Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

**A.   Failure to Develop the Record**

Plaintiff contends that the ALJ failed to fully develop the record and therefore his RFC finding was unsupported by substantial evidence. Specifically, plaintiff contends that the ALJ formulated an RFC without the benefit of any medical opinion regarding plaintiff's functional abilities. For the reasons that follow, the Court agrees.

Initially, the Court notes that the ALJ did not order a consulting examination regarding either plaintiff's physical or mental limitations. In his decision, the ALJ gave "limited weight" to the only functional assessment in the record, which was given by PA Moore and related to plaintiff's physical limitations. As noted above, PA Moore opined that plaintiff could stand for approximately two hours in an eight-hour workday; could walk for a total of three hours in an eight-hour workday but would need to rest after walking for 30 minutes; could sit for two hours in an eight-hour workday but only continuously for one hour at a time; and could not lift more than 10 pounds. The ALJ rejected this opinion as inconsistent with the medical evidence of record.

In this case, it was improper for the ALJ to arrive at an RFC without the benefit of expert medical opinion. "Although residual functional capacity determinations are reserved for the Commissioner, administrative law judges are unqualified to assess residual functional capacity on the basis of bare medical findings in instances when there is a relatively high degree of impairment." Palascak v. Colvin, 2014 WL 1920510, *8 (W.D.N.Y. May 14, 2014); see also Staggers v. Colvin, 2015 WL 4751123, *2 (D. Conn. Aug. 11, 2015) ("[A]n ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.") (quoting Hilsdorf v. Comm'r of Soc. Sec., 724 F. Supp. 2d

330, 347 (E.D.N.Y. 2010)). Here, the only treating assessment[1] in the record opined that plaintiff had significant work-related restrictions, yet the ALJ gave this opinion little weight, thus rendering his RFC finding unsupported by substantial evidence. See Lowe v. Colvin, 2016 WL 624922, at *7 (W.D.N.Y. Feb. 17, 2016) ("Because Dr. Sheehan is the only medical opinion in the record to assess Plaintiff's ability to lift and carry with specificity, and because the ALJ ultimately gave little evidentiary weight to that opinion, the Court is left with the circumstance of the ALJ interpreting raw medical data to arrive at a residual functional capacity determination, without the benefit of an expert medical opinion.") (internal quotation marks omitted).

As to plaintiff's mental limitations, the record does not contain a medical or other source opinion. Although plaintiff was treated for depression throughout much of the relevant time period, the ALJ failed to obtain a functional assessment from a treating mental health provider and did not order a consulting examination or even a reviewing psychologist's psychiatric review technique or mental RFC. Considering the record evidence of plaintiff's diagnosis and treatment for depression, the ALJ erred in failing to obtain a medical source opinion regarding her mental limitations.

---

[1] The Court notes that PA Moore was not formally an "acceptable medical source" under the applicable regulations. As an "other source," PA Moore's opinion is relevant to determining "the severity of [plaintiff's] impairment(s) and how it affects [her] ability to do work." 20 C.F.R. § 404.1513(d).

See, e.g., Cyman v. Colvin, 2015 WL 5254275, *6 (W.D.N.Y. Sept. 9, 2015) (reversing and remanding where record contained evidence of mental impairments and therefore "the ALJ's determination of plaintiff's mental RFC without reference to any treating source or consulting opinions was reversible error."); Stokes v. Astrue, 2012 WL 695856, *11 (N.D.N.Y. Mar. 1, 2012) (reversing and remanding where ALJ determined mental RFC without reference to any medical assessment of functional limitations, and where record contained evidence of mental impairments).

This case is therefore remanded for reconsideration of plaintiff's RFC. On remand, the ALJ is directed to contact plaintiff's treating medical sources for opinions as to plaintiff's physical and mental functional limitations. If opinions from treating sources cannot be obtained, the ALJ is directed to order consulting examinations. Having found remand necessary, the Court declines to address plaintiff's argument regarding credibility. Plaintiff's credibility must be reconsidered on remand upon thorough consideration of the fully developed administrative record.

**VI. Conclusion**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 11) is denied and plaintiff's motion (Doc. 10) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings

consistent with this Decision and Order. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                        **S/Michael A. Telesca**
                                        HON. MICHAEL A. TELESCA
                                        United States District Judge

Dated:    February 3, 2017
            Rochester, New York.